The next case before the court is case number 151849, In Re Rau. It is also an appeal from the Patent Trial and Appeal Board. All right, Mr. Calver, you want to reserve five minutes for rebuttal? Yes, ma'am.  You ready? I'm ready, Your Honor. Okay. I want to make sure we can let everybody else exit before we... Okay. All right, you can begin. Your Honors, may it please this Court, I actually have a nice eight-minute story to tell you about this invention. But given this morning's oral argument, with your permission, I'm going to go to the four critical findings of fact that the Board made that we submit are not supported by any evidence of record. That's a good move. It should be not substantial. That's okay. We would never get through the first minute of the eight-minute story, but okay. The principal reference the claims are rejected over is Ammon. Ammon is a topical disinfectant. You wash your hands with it. You wash the top of the hospital bench with it. Because it's applicable to patients with a rare bacterial infection, where the bacteria, when they are exposed to excessively dry conditions, sporulate, bacterial endospores, the most resistant form of life on earth, Ammon calls them. They happen when it's dry. That's got nothing to do with oral care solutions, Your Honor. The Board seized on paragraph 78, where in a flight of fancy, Ammon says, you could administer this systemically. You could do it through the eyes. You could do it through the nose. You could do it through the mouth. Delivering a systemic medication by the mouth, whether it's a solution or a pill or a tablet or a capsule, is not administration to the oral cavity. You're not delivering a functional ingredient to the oral cavity. That's non-analogous art, Your Honor. There's no support in the record, other than paragraph 78, to suggest anybody in the oral care solution business would ever look at a topical disinfectant. What's the difference between administering through the mouth and delivering through the oral cavity? If you direct the solution in a mouthwash, for instance, to the tissues of the oral cavity, Your Honor, that's delivering a functional ingredient to the buccal cavity. If you just swallow something, if the presence in the mouth is evanescent, is temporally limited, not because you want to treat something in the mouth, but because you want to treat it in the liver or the kidneys, that's not an oral care solution. And that's what Ammon teaches. So, you know, there are two tests on what is relevant art for purposes of consideration. And the Board never got to the second problem. It never got there, Your Honor. Even if we said that it wasn't in the same field of endeavor, wouldn't it be otherwise pertinent to the solution that you're trying to address? I don't think so, Your Honor, because the problem that was faced is how do you provide an aesthetically acceptable oral care solution? The answer is effervescence at a level below or not greater than 310 milliosmoles per kilogram. Above that, you kill the cells. I don't know why Ammon indicates a preference for a low osmolality. That is the same in the reference and the claims. But the solution, the problem they're facing in the solution is totally unrelated. Effervescence does you no good in a topical disinfectant. It goes off to the air. You never notice it. No, but if you put it in the mouth, wouldn't it impact the ease of taking it orally or the taste or it wouldn't otherwise affect how it operates orally? We don't know what formulations they had in mind for oral administration, Your Honor. There is no disclosure in that at all. But typically, no. Typically, effervescence is provided for an aesthetic purpose, plop, plop, fizz, fizz. Typically, effervescence doesn't impact the speed of anything. And if you're just swallowing it to ingest it, there's no taste associated with the tiny amounts of biguanide that are present in Ammon. So I don't think it's the same problem. I don't think it's the same endeavor. But if you do pick up Ammon and you want to figure out what solution to make, what buffer to use, Ammon tells you very explicitly in paragraph 19, use Tris. That's hardly a surprise. The entire world uses Tris more than any other physiologic buffer. Ammon says, if you've got a particular purpose, you can use Tris and something else. You can use Tris and more than something else. It doesn't require Tris, though. Oh, it does require Tris, Your Honor. That's Ammon paragraph 19. The board interpreted it differently because there are four preparations in Ammon that appear to not include Tris. But the specification at paragraph 19 is totally clear. The specification, bear with me. The specification reads, as mentioned above, one or more buffers may be employed. Tromethamine, that's Tris, is a known buffer which is suitable for use. As an alternative, and this is what the board said was different than Tris, as an alternative the subject solutions may include a supplemental buffering agent, meaning that the subject solutions may include a mixed buffer of Tromethamine and one or more other buffering agents. You've got to have Tris present according to the teaching of Ammon. There are 12 other classes of supplemental buffers. Ammon says you can use one or more. Certainly to get to Citric Acid and Sodium Bicarbonate, you have to use two out of that list. That's 12 factorial combinations. That's 475 million combinations. Out of that grouping, the board suggested Sodium Bicarbonate and Citric Acid are an obvious choice, one out of a few. Why? Again, those of skill in the art would recognize that effervescence comes from Sodium Bicarbonate and Citric Acid in effective amounts. It is of no utility in a topical disinfectant. The board went beyond that, however. They said, well, you could take Alka-Seltzer, that's Sodium Bicarbonate and Citric Acid and a lot of other things, and use that without Tris. The problem with doing that is there's not a reference in the world that teaches that. Alka-Seltzer has a lot of other things in it. It's got Aspirin, it's got Dimethicone, it's got Maltodextrin, which is important for the claims on appeal, but is not important for Ammon, because Ammon is, after all, what's disclosed and enabled, is a topical disinfectant. How do you get to the combination of a vaccine preparation, which is what the Alka-Seltzer was used for, and Ammon? There's no teaching that leads you there. But they only cite to Alka-Seltzer for the osmolality, right? No, Your Honor. Alka-Seltzer has too high an osmolality. Why Alka-Seltzer? Because there is no enablement, sorry, there's no exemplification in Ammon of Alka-Seltzer's Bicarbonate and here's a typical buffer. Alka-Seltzer is a record. That's the only reason it's a record. But without that, how on earth do you get to that one choice out of 475 million, where that's the one choice that will do you absolutely no good in the preparation of Ammon? So you're saying that Ammon is not only not in the relevant art, but it also teaches a lot, Your Honor. And that's because you think that Ammon requires TRIS. Government argues that Ammon, by its own examples, doesn't require TRIS. There are four examples that do not include TRIS. Three of those examples have no buffer at all. The language of paragraph 19 is absolutely clear. That's the language we just visited. The fact that they include, this is a government report and dutifully they included every piece of data that they had. I don't know what those three examples are intended to prove. But there's worse to come because the most important unsubstantiated finding comes from the fact that even if one of skill in the art makes this wild shot combination, sodium bicarbonate, citric acid, water, for an oral care solution, using alpha seltzer, the osmolality is too high. That was proved by declarative evidence. The board said, no problem, you dilute it. Osmolality is complex stuff. Is that what your inventor said? I thought he said it was pretty easy. My inventor said it's easy to measure. What Alan Rouse said at page 692 to 698 is that it's very easy to measure. It's complex and almost impossible to predict. That's why no one predicts it. The USP, which outside of the patent world is the US pharmacopeia, absolutely says dilution is so complicated that you cannot calculate it by dilution. So that if you have an osmolality of 10 and you dilute it by 50%, you do not have an osmolality of 5 because the osmolar coefficient is a function of concentration. It changes as you dilute. The board said a college undergraduate chemistry student would know precisely how to do this. Your Honor, I don't know an undergraduate student that would know that. I don't know a graduate student that would know that. It's complicated. It's in the declaration. You have to know the molar coefficient. In order to know the molar coefficient, you have to know what your dilution is. The minute you change the dilution, and that's right in the formula, the minute you change that dilution, you're lost. You have to start all over again. It's not easy. It's very difficult. It's an invention. And that, Your Honor, we submit are four findings that are not supported by even a scintilla of Ammon. Your argument is that Ammon requires the presence of Tris. The specification of Ammon is not in compromise. It's got to be there. I'm looking at it on page 55. It says preferably solutions of the present include Tris. And in another reference to Tris, it uses it as an example, meaning that it's not required, but it can be. Where does it say it's not required, Your Honor? It says you can have Tris, or you can have Tris and something else. That's the limit of Ammon. If it's not a solution, Your Honor, it doesn't concern us, because then there's no osmolality at all. Well, what about the sentence, preferably solutions of the present invention include Tris? They do. It says that. That's the reference, but that's not a requirement. That's a different portion of the specification. You can use Tris, it says, or Tris and something else. There's no teaching to go to the other 12 and make your selection. And even if you do that, Your Honors, even if you say forget Tris, now you're left with that same unbelievable number of possibilities. Out of that 475 million possibilities, there's one that's going to give you effervescence. And why do you want that one? That's the question the board couldn't answer, because the evidence doesn't support it. All right, thank you. You pretty much used up your rebuttal. We'll give you three minutes. Thank you, Your Honor. Good afternoon. May it please the Court. So first, I'll just point out that the claim is very broad. It's a very simple composition. It doesn't even say oral composition. It just says a composition comprising an effervescent combination of citric acid and sodium bicarbonate, which are both two common components dissolved in water, wherein the composition has an osmolality of under 310. And it doesn't point to anything unique or special about that range. And in fact, that range is quite broad. It just says under 310. And then now, you know, respond to the four points that were made. With the analogous art point, first of all, it is a factual finding, which is reviewed for substantial evidence. And it discloses at 78 that it is a topical—it's not limited to a topical disinfectant, that it can be used for—it can be used orally. And then if we turn to 63 and 80, it also discloses that it's a treatment for halitosis. And then if we compare that to—if we look at A79 to what applicant says is their summary of claimed subject matter, we say that it says that the composition can prevent tooth decay, clean teeth, reduce oral bacterial populations, freshen breath, and constitute a carrier for prescription medicine. So I submit that there is substantial overlap between the disclosures of Amon and what applicant has said is their invention. Is it your position that the claim had to have some kind of predicate preamble to say that it was for use in an oral composition and that we ignore the fact that the specification only talks about an oral composition? It's my position that—in this case, it doesn't matter because Amon is speaking to oral compositions, but the fact that it just claims a composition, I think—I don't know that you would have to read into the oral—to the claim, the oral composition. Can we divorce the claim from the written description? No, we can't, but I do think that in the specification there are, you know, broad disclosures about, you know, reducing bacterial population. There's a number of embodiments disclosed. But like I said, in this case, it doesn't matter because Amon clearly is to oral care as well. It's not limited to a topical disinfectant. The second point about TRIS, as Judge Reyna pointed out, it's hard to understand how it can be required when there are disclosures of a table that do not include TRIS. And if we look at the claims on 63 of Amon, they also do not claim TRIS. But again, the presence of TRIS doesn't matter. The claim is open-ended, and that was—as was mentioned at oral argument at the PTO, the fact that you have or don't have TRIS in the combination is irrelevant. Yeah, I don't really completely understand that argument. I understand the argument that there are some combinations, or at least one, that doesn't require TRIS and doesn't have—and has a buffer. But if it did require TRIS, if it only worked in the presence of TRIS, then—or perhaps only worked for the oral composition or the sort of limited extent to which it applies orally, wouldn't that actually be a fair argument, that it does teach away? I don't see that as a fair argument because when in 55 on—in period 19 of Amon, when it talks about TRIS, it says it can be used in combination with other suitable buffers. So I don't see how a claim to—if you're saying that Amon discloses TRIS with also the use of citric acid and sodium bicarbonate, I don't see how that claim wouldn't meet the broad composition claim. And again, the number of combinations mentioned by opposing counsel is irrelevant because the board used the SAP reference, which specifically talked about the citric acid-sodium-bicarbonate combination. The number of combinations is usually used—is attacked when, you know, the only—if Amon was the only reference being used, and then you might say, okay, yes, there's too many listed here to meet the claim. But here you're talking about just ingredients. So I don't think the number of combinations is relevant. And the last point about the osmolality and one of ordinary skill in the art, being able to make a composition with the required osmolality—I mean, everyone agrees that Amon does teach that the desired osmolality is—meets the claim limitation. And then if we look at 597 to the inventor's declaration, when he says that someone with an undergraduate degree in chemistry would have experience in the measurement of osmolality, it certainly is within the scale of one of ordinary skill in the art that they would— even if it's easy to measure it, it's not easy to determine the appropriate value for use in the invention. There's simply no evidence on the record that it's complicated beyond what one of ordinary skill in the art would be able to do. Can you explain that further? I mean, the— You don't see a difference between measuring a value and determining the appropriate value? Amon teaches that one of ordinary skill in the art would know how to vary osmolalities. Amon teaches that they made various solutions of test solutions. They talk about osmolality adjusting agents. So I think one of ordinary skill reading the Amon reference would be within the same range because Amon clearly discloses that they want the osmolality to be in the same claimed range. Okay, go ahead. If there's no further questions, I'll see you the rest of my time. Okay, thank you. There's nothing important about 310 milliosmoles per kilogram. That's where respondents started. That's where you start killing cells. That's what's wrong with Listerine, with Scope, with every dentifrice out there that's prepared in solution form. That's right in the specification. You can't miss it. That's the whole point of the invention. You've got to keep that osmolality low. Doesn't Amon disclose low osmolalities? Sure, without functional agents, Your Honor. The problem is if you include TRIS, if you say TRIS is included, you never get to SAC because the whole point of SAC is to prove that you can do without a physiological buffer in a vaccine. There's no TRIS there. SAC used Alka-Seltzer just for that purpose. You never get there. If you cut TRIS out, there's no example within that. But if you cut TRIS out, how do you go about preparing the solution of Amon that's going to be given orally? What makes it acceptable? Amon's not looking for effervescence because it's topical. There's just no way to get there. If TRIS is not included, then you're in a situation where the application of Alka-Seltzer is something taken out of the air. TRIS is a buffer. Alka-Seltzer is a buffer. That's the connection. That's what the board relied on. If you take TRIS out and you're just combining at will those 12 supplemental, there's a reason why they're called supplemental, those 12 supplemental buffers, how on earth are you going to reach out to Alka-Seltzer? Nobody disputes that if you do that, if for some reason you combine Alka-Seltzer with Amon, you have too high an osmolality. That's record evidence. So what are you going to do? Dilute it. That's the board's answer without evidence of record. Dilute it. Amon goes through 96 times 5, a lot of tests, testing each of its formulations at 5 levels of dilution because Amon is concerned that on dilution it loses potency. And sure enough, that's exactly what Amon found, that even at a 2 to 1 dilution potency dropped off. You're not going to freely dilute Amon. What about Alka-Seltzer? Alka-Seltzer is an OTC medication, just like a cold medication, just like aspirin. And we all know that all of those containers come with the words use as directed. Why? Because bad things happen if you don't use them as directed. If you dilute it, and you have to dilute Alka-Seltzer a lot because it's got all those non-ionic species present in it in order to get to the osmolality of 310 or less, the bad result is pain. It's ineffective. That's the same problem with Amon. The problem is that Alka-Seltzer is attempting to accomplish something different from what your inventor is attempting to accomplish, but that doesn't mean that with respect to the ability to assess the possible osmolality range for an oral composition, that diluting Alka-Seltzer, it wouldn't have been obvious. It would have been desired, Your Honor, if for some reason that would be possible. But I would refer you as the final answer to that question to A692 to 698. Alan Rau never said this was easy. He said it's easy to measure. One of ordinary skill in the art, he said, would know how to measure the osmolality. But at paragraph 9 of his declaration, which should be at 695, he tells you how complicated it is. The fact that it can be less than or greater than 1 makes it very difficult, if not impossible, to empirically determine a given solution osmolality. Had this been raised in the normal course of the seven years of prosecution this case went through, we would have submitted the evidence from the USP that says you can't do it. You've got to measure it or not. I see that in this later declaration, but what about what he submitted during prosecution? He said there's nothing at all complex or involved in determining osmolality. You make the solution and measure it with a meter. You start with a given combination as taught and alter it slightly. Test and alter. Soon a variable forest of compositions meeting the osmolality requirement comprising citric acid and sodium bicarbonate as the S event that's in couple will be established. Variable forest. You've determined it in reverse. You don't know what you're going to get. You don't know the other elements of the oral care solution or the functional agents. It's a problem, Your Honor. These osmolality calculations, you can measure solutions but simply because you can measure a thousand solutions without undue skill or undue experimentation doesn't mean you're going to get the combination of 310 or lower and effectiveness. That's the combination that's lost. Okay. Thank you, Your Honor. Case will be submitted.